## UNITED STATE BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | X | Honorable Vincent F. Papalia |
| | : | Chapter 11 |
| | : | Case No. 20-12093 |
| MONSEY ONE INC., | : | |
| | : | |
| Debtor. | : | **CHAPTER 11** |
| | : | **(Subchapter V Small Business)** |
| | : | |

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Monsey One Inc, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Jeffrey W. Herrmann, Esq.
Alex A. Pisarevsky, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel: (201)845-9600
jwh@njlawfirm.com
Attorneys for Debtor

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [HEARING DATE/11:00am] IN COURTROOM NO. 3B AT THE MARTIN LUTHER KING, JR. FEDERAL BUILDING, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

# TABLE OF CONTENTS

Page

SUMMARY OF THE PLAN AND DISTRIBUTION TO CREDITORS ......................................4

ARTICLE 1 - HISTORY OF BUSINESS OPERATIONS OF THE DEBTOR ...........................5

1.1 Nature of the Debtor's Business ................................................................................5

1.2 History of Business Operations of the Debtor ...........................................................5

1.3 Filing of the Debtor's Chapter 11 Case .....................................................................5

1.4 Legal Structure and Ownership .................................................................................5

1.5 Debtor's Assets ..........................................................................................................5

1.6 Debtor's Liabilities ....................................................................................................6

1.7 Current and Historical Financial Circumstances ......................................................8

1.8 Events Leading to the Filing of the Bankruptcy Case ..............................................9

1.9 Significant Events During the Bankruptcy Case .......................................................9

1.10 Projected Recovery of Available Transfers .............................................................9

ARTICLE 2 - THE PLAN ........................................................................................................9

2.1 Unclassified Claims ...................................................................................................9

    A. Administrative Claims .............................................................................................9

    B. Priority Tax Claims ...............................................................................................12

2.2 Classes of Claims and Equity Interests ..................................................................13

    A. Classes of Secured Claims ....................................................................................13

    B. Classes of Priority Unsecured Claims ..................................................................14

    C. Class of General Unsecured Claims ......................................................................15

    D. Class of Equity Interest Holders ...........................................................................15

2.3 Estimated Number and Amount of Claims Objections ...........................................16

2.4 Treatment of Executory Contracts and Unexpired Leases .....................................16

2.5 Means for Implementation of the Plan ....................................................................18

2.6 Payments .................................................................................................................18

2.7 Post-Confirmation Managements ............................................................................18

2.8 Tax Consequences of the Plan ................................................................................19

Circular 230 Disclaimer .................................................................................................19

i

A. Compliance with Tax Requirements ..................................................................................19

B. Tax Consequences to the Debtor ......................................................................................19

C. Tax Consequences to Holders of Claims or Equity Interest ...............................................20

2.9 Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan ....20

ARTICLE 3 - FEASIBILITY OF PLAN..................................................................................20

3.1 Ability to Initially Fund Plan ..........................................................................................20

3.2 Ability to Make Future Plan Payments and Operate Without Further Reorganization .........21

ARTICLE 4 – LIQUIDATION ANALYSIS .............................................................................21

ARTICLE 5 – DISCHARGE ..................................................................................................21

5.1 [Option 1 – if § 1141(d)(3) is not applicable] ..................................................................21

ARTICLE 6 – GENERAL PROVISIONS ...............................................................................22

6.1 Title to Assets ...............................................................................................................22

6.2 Binding Effect...............................................................................................................22

6.3 Severability ...................................................................................................................22

6.4 Retention of Jurisdiction by the Bankruptcy Court ..........................................................22

6.5 Captions .......................................................................................................................23

6.6 Modification of Plan ......................................................................................................23

6.7 Final Decree .................................................................................................................23

ARTICLE 7 – ATTACHMENTS ...........................................................................................24

ARTICLE 8 – FREQUENTLY ASKED QUESTIONS .............................................................25

ARTICLE 9 – DEFINITIONS................................................................................................ 27-30

9.1 Explanation of definitions and rules ...............................................................................27

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan calls for payment in full of all allowed claims. Administrative expenses incurred in the ordinary course during the pendency of the bankruptcy will be paid prior to confirmation. All other administrative claims will be paid on confirmation, subject to Court approval.

A secured claim will be paid in full in accordance with an insurance premium financing arrangement previously approved by the Court. Doc. Nos. 56, 62.

Priority tax claims will be paid in full in four quarterly payments beginning on or about January 1, 2021. General unsecured claims will be paid in full in 20 equal quarterly payments beginning January 1, 2021 and ending on October 1, 2025.

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

Debtor is engaged in the transportation of containers by truck.

### 1.2.    History of Business Operations of the Debtor

Monsey One Inc. ("Monsey" or "Debtor") was established in 1997. Debtor started as an in-house trucking company draying wine and spirits for one of the largest importers in the US and grew to offer a much needed transportation service transporting Sealed Heavy Weight Ocean Borne containers.

Utilizing its specialized fleet, Monsey provides hauling for various commodities (dry and refrigerated) safely and securely. This gives Monsey's customers the opportunity to increase ocean borne cargo weight and decrease container volume and the associated shipping costs.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On February 7, 2020, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey.

### 1.4.    Legal Structure and Ownership.

Baruch Guzelgul owns 100% of the equity of the Debtor. The Debtor is a Subchapter S Corporation.

### 1.5.    Debtor's Assets.

Debtor's assets, together with a fair market value and basis for the valuation, are set forth below:

| Asset | Model or Serial No. | Value | Source |
|---|---|---|---|
| Cash (projected on 1/1/21) | N/A | $113,124 | Exhibit "J" |
| Accounts Receivable | N/A | $149,361 | Exhibit "J" |
| 2001 Mack Truck | AS721X | $4,000 | Average of value opinions by auctioneer and truck dealer |
| 2007 Mack Truck | AR699C | $7,500 | Same as above |
| 2007 Mack Truck | AR701C | $7,500 | Same as above |
| 2007 Mack Truck | AR700C | $7,500 | Same as above |

| | | | |
|---|---|---|---|
| 2007 Freightliner Truck | AS722X | $7,000 | Same as above |
| 2008 Freightliner Truck | AS723X | $7,000 | Same as above |
| 1987 Chassis | STRICK | $1,750 | Experience and advertisements for used chassis |
| 1984 Chassis | THEU | $1,750 | Experience and advertisements for used chassis |
| 1990 Chassis | GREAT DANE | $1,750 | Experience and advertisements for used chassis |
| 1991 Chassis | MONON | $1,750 | Experience and advertisements for used chassis |
| 1997 Chassis | GREAT DANE | $1,750 | Experience and advertisements for used chassis |
| 1995 Chassis | STRICK | $1,750 | Experience and advertisements for used chassis |
| 2017 T15U Taylor Generator | 30805 | $5,500 | Experience |
| 2017 T15U Taylor Generator | 30806 | $5,500 | Experience |
| 2017 T15U Taylor Generator | 30807 | $5,500 | Experience |
| 2017 T15U Taylor Generator | 30808 | $5,500 | Experience |
| Office Equipment (computers, cameras, etc.) | | $2,000 | Experience |
| **Total** | | **$337,485** | |

### 1.6. **Debtor's Liabilities.**

Debtor's liabilities are set forth below:

Administrative Claims:[1]

| Creditor | Claim Amount | Basis for Treatment |
|---|---|---|
| Riker Danzig Scherer Hyland Perretti LLP | $10,000, subject to Court approval. | Joseph L. Schwartz, Subchapter V Trustee |
| Cohn Lifland Pearlman Herrmann & Knopf LLP | $75,000.00 (reflects credit for initial retainer), subject to Court approval. | Debtor's counsel |
| **Total** | $85,000 | |

Secured Claims:

| Creditor | Claim No. | Claim Amount (as of 8/13/20) | Collateral |
|---|---|---|---|
| FIRST Insurance Funding | Order Approving Premium Financing, Doc. No. 56 | $123,680.83 | Unearned premiums |
| **Total** | | $123,680.83 | |

Unsecured Priority Claims:

| Creditor | Claim No. | Claim Amount |
|---|---|---|
| IRS | 3-2 | $2,438.19 (Estimated) |
| Franchise Tax Board | 9-1 | $872.73 |
| **Total** | | $3,310.92 |

---

[1] Debtor will be current with all other administrative creditors on or before confirmation.

General Unsecured Claims:

| Creditor | Claim No. | Undisputed Amount | Disputed Amount |
|---|---|---|---|
| Interpool, Inc. d/b/a Trac Intermodal | 1-1 | $6,452.25 | $0 |
| IRS | 3-2 | $536.33 | $0 |
| Williams Scotsman Inc | 4-1 | $7,037.38[2] | $0 |
| Contract Leasing Corp. (DISPUTED) | 5-1 | $7,657.65 | $16,644.97 |
| American Express National Bank | 6-1 | $60,296.38 | $0 |
| Bay View Logistics Inc. | 7-1 | $16,121.00 | $0 |
| American Express National Bank | 8-1 | $65,762.89 | $0 |
| Franchise Tax Board | 9-1 | $439.93 | $0 |
| Ocean Network Express Pte. Ltd. | 10-1 | $700.00 | $0 |
| American Express National Bank | 11-1 | $10,705.44 | $0 |
| DeLage Landen Financial Services Inc. | 12-1 | $6,639.80 | $0 |
| Wan Hai Lines | 13-2 | $600 | $0 |
| Star Leasing Co. | 14-1 | $13,000.38 | $0 |
| Ryder Truck Rental, Inc. d/b/a Ryder Transportation (DISPUTED)[3] | 15-1 | $48,401.69 | $0 |
| Clifton Boulevard Property Inc. (DISPUTED)[4] | 16-1 | $0 | $24,500 |
| **Total** | | $244,351.12 | $41,144.97 |

[2] Claim No. 2-1 filed by Williams Scotsman Inc. was expunged. Doc. No. 32. Claim No. 4-1 filed by Williams Scotsman Inc. was reduced to $7,037.38.
[3] The creditor in question filed a Proof of Claim in the amount of $32,829.24. Debtor believes that this creditor incorrectly included $15,572.45 as a post-petition expense, when in fact, it was actually a pre-petition expense.
[4] Proof of Claim filed out of time.

**1.7.** **Current and Historical Financial Conditions.**

Debtor attempted to expand its operations into California. Unfortunately, Monsey was unable to generate a profit from its California operations and this portion of the business also incurred significant operating losses. In 2018, Debtor's New Jersey operations generated a net income of $173,037 on total income of approximately $5,400,000. See 2018 P&L – NJ Operations, attached as Exhibit "C." During the same year, Debtor's California operations generated a net loss of $237,037 on total income of $996,302. See 2018 P&L – CA Operations, attached as Exhibit "D."

Monsey closed down its California operations in February 2019. However, the Company continued to make payments on a variety of leased equipment located in California, which was then being kept idle. In November 2019, Monsey lost a major client, which had accounted for approximately $1,000,000 in revenue. In 2019, Debtor's New Jersey operations generated a net income of $130,132 on total income of approximately $3,700,000. See 2019 P&L – NJ Operations, attached as Exhibit "E." During the same year, Debtor's California operations generated a net loss of $74,349 on total income of $182,668. See 2019 P&L – CA Operations, attached as Exhibit "F."

Monsey's operating reports demonstrate that its cash position fluctuated from February 2020, when the case was filed, through May 2020, as follows:

| Month | Net Cash Flow | Operating Report Citation |
| --- | --- | --- |
| February 2020 | -$37,113 | Doc. No. 46 |
| March 2020 | $2,080 | Doc. No. 47 |
| April 2020 | $153,553 | Doc. No. 67 |
| May 2020 | -$63,426 | Doc. No. 68 |

The increase in cash during April 2020 was a function not of profits, but of Debtor prioritizing its expenses to ensure that it was able to make the large up-front payments necessary to finance its insurance premiums. See Doc. No. 56 (Insurance Premium Financing Order); Doc. No. 67, at p. 5 (April 2020 Operating Report).

In fact, due primarily to decreased economic activity associated with the COVID-19 pandemic, Monsey incurred an operating loss for the first five months of 2020. See P&L Jan – May 2020, attached as Exhibit "G." However, due to increased economic activity, the last two months – June and July 2020 – were very profitable. Debtor anticipates filing operating reports for June and July 2020, and being able to provide a P&L statement for these two months, in the near future.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

Monsey One was forced to file for bankruptcy for several reasons. The first was the loss in November 2019 of a major client that contributed approximately $1,000,000.00 per year in revenue. The second were losses sustained in Monsey's California operation, which was closed in February 2019. As a result of these events, the company was paying for the lease of several dozen units (trucks & chassis) that could not be utilized.

### 1.9. Significant Events During the Bankruptcy Case.

Among the significant events that occurred during the pendency of this matter are the following:

- The return of trucks and chassis to their respective leasing companies, thereby significantly reducing operating expenses;
- Consummation of an insurance premium financing plan resulting in more available cash flow;
- Approval of an interest free $25,000.00 loan providing necessary working capital;
- Initiation of collection efforts as to delinquent customers;
- Substitution of Cohn Lifland Pearlman Herrmann & Knopf LLP as counsel for the Debtor in place of initial counsel for the Debtor;
- Initiation of proceedings to reduce certain creditor claims.

### 1.10. Projected Recovery of Avoidable Transfers

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation by September 15, 2020. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

**ARTICLE
2**

**THE
PLAN**

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1. <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

    A.     Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

    1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | N/A | Paid in full upon or prior to confirmation, or according to terms of obligation, if later. |
| Administrative Tax Claim | N/A | N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | N/A | Paid in full upon or prior to confirmation, or according to terms of obligation, if later. |

| | | |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court: | | After Bankruptcy Court approval, Payment through the Plan as follows: |
| Cohn Lifland Pearlman Herrmann & Knopf LLP | $75,000 | To be paid upon confirmation, subject to Court approval. |
| Clerk's Office fees | N/A | N/A |
| Other Administrative Expenses | N/A | N/A |
| Trustee<br><br>Riker Danzig Scherer Hyland Perretti LLC | $10,000 | Upon application under § 330 and after Bankruptcy Court approval, to be paid on upon confirmation. |
| **TOTAL** | $85,000 | |

B.     Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
| --- | --- | --- | --- |
| Internal Revenue Service | $2,438.19 | HVY Vehicle 7/1/18 = $38.19 Corp-Inc 12/31/19 = $2,400.00 | Pmt Interval = Quarterly payments = Begin approximately Date = 1/1/21 End Date = 10/1/21 Interest Rate % = 0% Total Payment = $2,438.19 |
| State of California Franchise Tax Board | $872.73 | 12/31/18 | Pmt Interval = Quarterly payments = Begin Date = 1/1/21 End Date = 10/1/21 Interest Rate % = 0% Total Payment = $872.73 |
| Total | $3,310.92 | | |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
|         |             |                      |            |           |

| 1 | *Secured claim of*: Name = FIRST Insurance Funding<br><br>Collateral description =<br><br>Unearned premiums<br><br>Allowed Secured<br><br>Amount = $159018.21<br><br>Priority of lien<br><br>= First<br><br>Principal<br><br>owed =<br><br>$ 154,954.94<br><br>Pre-pet. arrearage = N/A<br><br>Total claim<br><br>=<br><br>$ 159018.21 | No | Unimpaired | [Monthly Pmt.] = $17,668.69<br><br>Pmts Began = 6/14/20 (down payment and 2 monthly payments already made)<br><br>Pmts End =<br><br>2/14/21<br><br>[Balloon Pmt] =<br><br>N/A<br><br>Interest rate % =<br><br>6.25%<br><br>Treatment of Lien [including whether claim is being treated under §1190(3)] = no modification<br><br>[Additional payment required to cure defaults] = N/A |

B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| N/A | Priority unsecured claim pursuant to Section N/A<br>Total amt of claims =<br>$ | | |
| | Priority unsecured claim pursuant to Section N/A<br>Total amt of claims =<br>$ | | |

### C. Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of general unsecured claims:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2 | General Unsecured Class | Unimpaired | Quarterly Pmt = $12,217.56<br>Pmts Begin = 1/1/21<br>Pmts End = 10/1/25<br>Interest rate % = 0%<br>from<br><br>percent of claim paid = 100% |

### D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Equity Interest Holders = Baruch Guzelgul | Unimpaired | N/A |

### 2.3. **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|:---:|:---:|:---:|
| 2 | 3 [Claim Nos. 5-1, 15-1, 16-1] | $16,644.97, $15,572.45 (adjustment related to administrative expense), $24,500.00 |
| | | |

### 2.4. **Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

The Executory Contracts shown on Exhibit _H_ shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit __H___ also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

[X] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit  I   shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit _____I_____,  or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is _____ .** Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5.  **Means for Implementation of the Plan.**

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

### 2.6.  **Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

## 2.7.   Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Baruch Guzelgul | Owner | $156,000 per year |
| Eddie Schekalo | COO/CFO/& Operations Supervisor | $105,000-$120,000 per year, not including travel/commuting expenses which are around $10,000 per year |

## 2.8.   Tax Consequences of the Plan.

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.**

## 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in Exhibit    J    .

In short, Debtor projects it will reduce its expenses by approximately $34,000 per month by returning the leased vehicles it does not need - $25,000 per month from the Ryder leases and $9,000 per month from the Star leases. Additionally, since Debtor's insurance is calculated on a per unit basis, Monsey anticipates it will save at least $4,000 per month on insurance expenses.

With these reduced expenses, as well as the increase in economic activity expected going forward, Monsey projects that it will be able to fund the payments under the proposed Plan.

Debtor will need to pay $85,000 upon confirmation. After confirmation, Debtor will need to pay $12,217.56 quarterly in general unsecured claims. In addition, the Debtor shall pay a total of $3,310.92, representing priority tax claims, such claims to be paid in four quarterly payments in 2021.

Debtor projects that the business will be consistently cash flow positive by November 2020 and that the net cash flow will increase to at least $20,000 per month by May 2021.

# ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit   A   .

### 3.2.    **Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit   J   (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of approximately $200,000. The final Plan payment is expected to be paid on October 1, 2025.


# ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit  B  .

## ARTICLE 5
## DISCHARGE.

**5.1.**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

**6.1.    Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**6.2.    Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

# ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan:

Exhibit "A" – Cash on Hand on the Effective Date
Exhibit "B" – Liquidation Analysis
Exhibit "C" – 2018 P&L – NJ Operations
Exhibit "D" – 2018 P&L – CA Operations
Exhibit "E" – 2019 P&L – NJ Operations
Exhibit "F" – 2019 P&L – CA Operations
Exhibit "G" – 2020 P&L – Jan 1 to May 31
Exhibit "H" – Assumed Leases
Exhibit "I" – Rejected Leases
Exhibit "J" - Projections

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the DEBTOR Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 of the Planlists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the _____ Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address:

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Jeffrey W. Herrmann, Esq.
Alex A. Pisarevsky, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel: (201)845-9600
jwh@njlawfirm.com
Attorneys for Debtor

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9
# DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9. Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12. Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which [DEBTOR] is the Debtor-in-Possession.

**9.15 Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing**: The hearing to be held on _____, 20__ to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**: February 7, 2020, the date the chapter 11 petition for relief filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.  Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.  Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.  Trustee**: Joseph L. Schwartz, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.  Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: _____

COHN LIFLAND PEARLMAN
   HERRMANN & KNOPF LLP
Jeffrey W. Herrmann, Esq.
Alex A. Pisarevsky, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel: (201)845-9600
jwh@njlawfirm.com
Attorneys for Debtor